UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
LAWRENCE BITKOWER, VERONICA BITKOWER, : Civ. No.; 13-Civ 04777 (RJS)
EVAN DACH, MIU NG, DONALD NEMCOVSKY, :
CHARLES KAUFMAN, JACQUELINE KAUFMAN, :
RALPH WIZNITZER, ALAN ROTH, SEAN FINNERTY, :
IBRAHIM ALI, GUY WEGENER, ELVIRA JANTURINA :
                                                             :
                                    Plaintiffs,              :    **FIRST AMENDED**
                                                             :    **COMPLAINT**
        -v.-                                                 :
                                                             :    **ECF CASE**
STARBUCKS CORPORATION d/b/a                                  :
STARBUCKS COFFEE COMPANY                                     :    **JURY TRIAL DEMANDED**
                                                             :
                                    Defendant.               :
------------------------------------------------------------X

Plaintiffs LAWRENCE BITKOWER, VERONICA BITKOWER, EVAN DACH, MIU NG, DONALD NEMCOVSKY, CHARLES KAUFMAN, JACQUELINE KAUFMAN, RALPH WIZNITZER, ALAN ROTH, IBRAHIM ALI, GUY WEGENER, SEAN FINNERTY, and ELVIRA JANTURINA ("Plaintiffs"), by and through their undersigned counsel, EISENBERG & BAUM, LLP, as and for their Complaint against Defendant STARBUCKS CORPORATION d/b/a STARBUCKS COFFEE COMPANY ("Starbucks") hereby alleges as follows:

## PRELIMINARY STATEMENT

1. While many New Yorkers are frequenting Starbucks for their morning cup of coffee, unbeknownst to them, the company is discriminating against Deaf individuals by refusing to serve them coffee because they are Deaf, making fun of the way they speak, attempting to eject them from their stores, and making false allegations against them to the police. These incidents are not isolated, but occurred on multiple occasions at more than one Starbucks location in New York City. Starbucks' wrongful, illegal, and intentional discrimination against

Deaf Individuals on the basis of their disability is reflected by the company's lack of training and serious policies of non-discrimination against Deaf individuals.

## NATURE OF THE CLAIMS

2. Plaintiffs seek declaratory, injunctive, and equitable relief, monetary damages, and attorneys fees to redress Defendant's unlawful discrimination on the basis of disability in violation of the New York State Human Rights Law, Article 15 of the N.Y. Executive Law §§ 290, et seq. and the New York City Human Rights law, New York City Administrative Code §§ 8-101 et. seq.

3. Defendant's conduct is also in violation of the Americans with Disabilities Act ("ADA"), 42 USC §§ 12101 et seq. and its implementing regulation, 28 C.F.R. Part 36. Plaintiffs seek declaratory, injunctive, and equitable relief, as well as attorneys fees for this violation.

4. Defendant's unlawful, discriminatory conduct was intentional, knowing, malicious, deliberately indifferent, willful and wanton and/or showed a reckless disregard for Plaintiffs' protected rights to be free from discrimination, which has caused and continues to cause Plaintiffs humiliation, emotional pain, mental anguish, and suffering.

## THE PARTIES

5. Plaintiff LAWRENCE BITKOWER is an individual residing in Bergen County, New Jersey. Plaintiff is Deaf, communicates in Sign Language, and is a person with a disability within the meaning of Federal, State, and City discrimination laws.

6. Plaintiff VERONICA BITKOWER is an individual residing in Bergen County, New Jersey. Plaintiff is Deaf, communicates in Sign Language, and is a person with a disability within the meaning of Federal, State, and City discrimination laws.

7. Plaintiff EVAN DACH is an individual residing in Kings County, New York. Plaintiff is Deaf, communicates in Sign Language, and is a person with a disability within the meaning of Federal, State, and City discrimination laws.

8. Plaintiff DONALD NEMCOVSKY is an individual residing in New York County, New York. Plaintiff is hearing-impaired and is a person with a disability within the meaning of Federal, State, and City discrimination laws.

8. Plaintiff MIU NG is an individual residing in New York County, New York. Plaintiff is Deaf, communicates in Sign Language, and is a person with a disability within the meaning of Federal, State, and City discrimination laws.

10. Plaintiff CHARLES KAUFMAN is an individual residing in New York County, New York. Plaintiff is Deaf, communicates in Sign Language, and is a person with a disability within the meaning of Federal, State, and City discrimination laws.

11. Plaintiff JACQUELINE KAUFMAN is an individual residing in New York County, New York. Plaintiff is Deaf, communicates in Sign Language, and is a person with a disability within the meaning of Federal, State, and City discrimination laws.

12. Plaintiff RALPH WIZNITZER is an individual residing in Bergen County, New Jersey. Plaintiff is Deaf, communicates in Sign Language, and is a person with a disability within the meaning of Federal, State, and City discrimination laws.

13. Plaintiff IBRAHIM ALI is an individual residing in Union County, New Jersey. Plaintiff is Deaf, communicates in Sign Language, and is a person with a disability within the meaning of Federal, State, and City discrimination laws.

14. Plaintiff GUY WEGENER is an individual residing in Queens County, New York. Plaintiff associates with persons with disabilities within the meaning of Federal and City discrimination laws.

15. Plaintiff ALAN ROTH is an individual residing in New York County, New York. Plaintiff is Deaf, communicates in Sign Language, and is a person with a disability within the meaning of Federal, State, and City discrimination laws.

16. Plaintiff SEAN FINNERTY is an individual residing in Westchester County, New York. Plaintiff is Deaf, communicates in Sign Language, and is a person with a disability within the meaning of Federal, State, and City discrimination laws.

9. Plaintiff ELVIRA JANTURINA is an individual residing in Kings County, New York. Plaintiff is Deaf, communicates in Sign Language, and is a person with a disability within the meaning of Federal, State, and City discrimination laws.

17. Defendant STARBUCKS CORPORATION d/b/a STARBUCKS COFFEE COMPANY ("Starbucks") is a foreign corporation organized under the laws of the State of Washington with its principal place of business in Seattle, Washington and is duly registered to do business, and is actively doing business, in the State of New York.

## JURISDICTION AND VENUE

18. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 in that this civil rights action arises under federal law, *see* 29 U.S.C. § 621 et seq. The court has supplemental jurisdiction over plaintiffs' state and city law claims under 28 U.S.C. §1367 and principles of pendent and/or ancillary jurisdiction.

19. This court has *in personam* jurisdiction over Defendant because it has stores and corporate offices in, conducts operations within, transacts business in and provides services

4

within New York City and New York County, State of New York.

20. Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events that give rise to the claim occurred in this district.

21. Pursuant to § 8-502(c) of the New York City Human Rights Law, Plaintiffs will serve a copy of this complaint on the City of New York Commission on Human Rights and Corporation Counsel of the City of New York.

## BACKGROUND

**August 2012 Discrimination Incident: 424 Park Avenue South Starbucks Location**

22. In August of 2012, Plaintiff Alan Roth ("Mr. Roth") went to the Starbucks store located at 424 Park Avenue South, New York, NY 10016 at approximately 6:00 am to order coffee.

23. Mr. Roth proceeded to place his order at the front counter and the Starbucks employee proceeded to laugh at him, stated that he sounded funny, and asked him to continually repeat himself as she laughed harder each time.

24. Mr. Roth was shocked and humiliated and asked the Starbucks employee if she had a problem with him being Deaf.

25. The Starbucks employee continued to laugh hysterically at Mr. Roth's speech and caused a scene within the store.

26. Mr. Roth demanded to speak with a manager and told the Starbucks employee that she was being unprofessional and cruel.

27. Mr. Roth repeatedly demanded to speak with a manager and when his initial request was refused, the Starbucks employee proceeded to get angrier and informed Plaintiff that no manager was present.

28. Mr. Roth then proceeded to inform another Starbucks employee about what had transpired.

29. The Starbucks employee who laughed at Mr. Roth's speech then proceeded to go around the counter and started screaming obscenities in Plaintiff's face and was then pulled away by other Starbucks staff.

30. Mr. Roth began to shake in shock, anxiety, and fear as he never before been so blatantly and maliciously discriminated against because he is Deaf.

31. Other Starbucks employees defended the illegal discrimination of the laughing Starbucks employee and told Mr. Roth to leave and that he was not welcome to patronize that store ever again.

32. Plaintiff, Mr. Roth returned to the store later to report the incident to a manager.

33. The Starbucks manager defended the Starbucks employee and the manager took no action.

34. Mr. Roth then reported the incident to corporate offices.

35. Plaintiff Alan Roth was humiliated by this blatant and illegal incident of discrimination and was retaliated against for his opposition to such discrimination and was treated like a non-person, all on the basis of his disability.

**October 2012 Discrimination Incident: 13-25 Astor Place Starbucks Location**

36. Plaintiff Lawrence Bitkower organized an informal monthly "Deaf Chat Coffee" gathering at the Starbucks Store located at 13-25 Astor Place, New York, New York 10003.

37. The "Deaf Chat Coffee" gathering met on the first Thursday evening of the month from 8:00pm to 12:00am starting on October 4, 2012. Deaf individuals and those interested in

Deaf culture would meet at Starbucks to purchase coffee and other Starbucks products and get to know one another.

38. Plaintiffs Lawrence Bitkower, Veronica Bitkower, Charles Kaufman, Jacqueline Kaufman, Evan Dach along with a group of other Deaf individuals attended this "Deaf Chat Coffee" gathering.

39. Plaintiff Lawrence Bitkower called the Starbucks store ahead of time and received permission by a manager to hold the monthly planned gathering.

40. On October 4, 2012, even though the posted hours of operation indicated that the store closed at 1:00am, upon information and belief a manager by the name of "Ziyad" told some of the Deaf Individuals that they had to leave by 11:00pm.

41. Plaintiffs Lawrence Bitkower, Veronica Bitkower, Charles Kaufman, Jacqueline Kaufman, and Evan Dach were confused as to why they were told to leave before the posted closing time, little realizing that this was the beginning of the many instances of illegal discrimination by "Ziyad" and other Starbucks employees.

**November 2012 Discrimination Incident: 2 Columbus Ave Location**

42. In November of 2012, Plaintiff Donald Nemcovsky ("Mr. Nemcovsky") went to the Starbucks store located at 2 Columbus Circle, New York, NY 10023 with his wife to order coffee.

43. Mr. Nemcovsky proceeded to place his order at the front counter with his wife.

44. Mr. Nemcovsky placed his order asking for a small skim milk decaf latte.

45. After placing his order, Starbucks employees tried to communicate with Mr. Nemcovsky while he was looking away. Mr. Nemcovsky did not respond as he is hearing-impaired and did not hear the Starbucks employees.

46. Finally, Mr. Nemcovsky noticed through his peripheral vision that Starbucks employees were trying to get his attention.

47. The Starbucks employee asked him if he meant a "tall" drink.

48. Mr. Nemcovsky placed his order again asking for a small skim milk decaf latte as his order was clear.

49. After insisting Mr. Nemcovsky to place his order again, Starbucks employees again tried to get Mr. Nemcovsky's attention when he was not facing them when they knew or should have known that he was hearing impaired from their previous interaction.

50. Mr. Nemcovsky did not respond as he is hearing-impaired and did not hear the Starbucks employees.

51. Starbucks employees began to start yelling, banging on the counter, and waving their arms at him in a harassing manner drawing attention to Mr. Nemcovsky as he was not responding to them because he is hearing impaired.

52. Finally, Mr. Nemcovsky noticed yet again through his peripheral vision that Starbucks employees were trying to get his attention.

53. The Starbucks employee again asked him in an embarrassing and harassing manner if he meant a "tall" drink when they should have known that small meant "tall".

54. Mr. Nemcovsky then placed his order again asking for a small skim milk decaf latte as his order was clear.

55. Mr. Nemcovsky's wife then proceeded to see two Starbucks employees pointing and laughing at Mr. Nemcovsky while Mr. Nemcovsky's back was turned away from them.

56. Mr. Nemcovsky's wife then proceeded to complain to the Starbucks employees.

57. Mr. Nemcovsky's wife informed the Starbucks employees that making fun of her husband's hearing impairment was unacceptable and conveyed to them that their behavior towards her husband and his disability was wildly inappropriate as no one with a hearing impairment should be singled out, pointed at, and laughed at for not being able to hear.

58. Mr. Nemcovsky and his wife left and never returned to that location again.

59. Plaintiff Donald Nemcovsky was humiliated by this illegal incident of discrimination and was treated like a non-person, all on the basis of his disability.

**December 2012 Discrimination Incident: 13-25 Astor Place Starbucks Location**

60. The next monthly gathering of "Deaf Chat Coffee" occurred on December 6, 2012 at the Starbucks Store located at 13-25 Astor Place, New York, New York 10003 as the November 1, 2012 gathering was cancelled due to the weather of Superstorm Sandy.

61. Plaintiffs Miu Ng, Elvira Janturina, Lawrence Bitkower, Ibrahim Ali, Veronica Bitkower, Charles Kaufman, Jacqueline Kaufman, Evan Dach, and Sean Finnerty along with other Deaf individuals attended the "Deaf Chat Coffee" gathering.

62. At approximately 9:00 pm, four hours before the posted closing time, a total of four Starbucks employees told the "Deaf Chat Coffee" group that they had to leave the area they were occupying as it was going to be cleaned.

63. Once, the "Deaf Chat Coffee" group moved, the Starbucks Employees proceeded to allow non-deaf customers into that area and did not clean the area.

64. At approximately 9:00 pm, Plaintiff Sean Finnerty ("Mr. Finnerty"), waited in line and proceeded to try to place an order with a Starbucks Employee by handing his written order on a piece of paper to the Starbucks employee.

65. The Starbucks employee refused to serve Mr. Finnerty.

66. Confused, Mr. Finnerty demanded to know why he was not being served.

67. The Starbucks employee informed Mr. Finnerty via writing that Starbucks was not serving Deaf individuals.

68. Shocked, humiliated, and disgusted Mr. Finnerty reported what had happened to other Deaf individuals of the "Deaf Chat Coffee" and the manager "Ziyad".

69. Plaintiffs Elvira Janturina and Miu Ng along with their two other friends who are Deaf attempted to place an order with the Starbucks Employee and were also refused service because they are Deaf.

70. Additional requests for service were made by Plaintiffs Elvira Janturina and Miu Ng and were refused by the Starbucks employee as the employee continued to serve other non-deaf customers.

71. Finally, Plaintiff Elvira Janturina had to beg a non-deaf stranger to order for her and her Deaf friends in order to receive service.

72. Plaintiffs Lawrence Bitkower, Charles Kaufman, and Evan Dach spoke to Starbucks employee "Ziyad" about their disgust about how the Deaf were being treated by Starbucks. "Ziyad" rejected their concerns and told them that "Ziyad's" manager told him to not serve Deaf individuals.

73. Plaintiffs Miu Ng, Elvira Janturina, Lawrence Bitkower, Veronica Bitkower, Charles Kaufman, Jacqueline Kaufman, Ibrahim Ali, Evan Dach, and Sean Finnerty were discriminated against, humiliated, retaliated against for their opposition to such discriminatory practices, and were treated like non-persons as they were denied equal services and privileges as afforded to non-deaf individuals.

## February 2013 Discrimination Incident: 13-25 Astor Place Starbucks Location

74. The next gathering of the "Deaf Chat Coffee" gathering was on February 7, 2013 at the Starbucks Store located at 13-25 Astor Place, New York, New York 10003 as the January 3, 2013 gathering was cancelled due to inclement weather.

75. Plaintiffs Lawrence Bitkower, Veronica Bitkower, Charles Kaufman, Jacqueline Kaufman, Evan Dach, and Ralph Wiznitzer along with other Deaf individuals attended the "Deaf Chat Coffee" gathering.

76. A Starbucks Employee asked the Deaf individuals what they were doing there and then proceeded to inform the Deaf individuals again at around 9:00 pm that the area they were sitting in was being closed for cleaning.

77. Again, once the Deaf Individuals moved, the Starbucks employees did not clean the area but rather let other non-deaf individuals into the area.

78. As Lawrence Bitkower, Veronica Bitkower, Charles Kaufman, Jacqueline Kaufman, Evan Dach, and Ralph Wiznitzer attempted to obtain service, a Starbucks employee who knew some sign language attempted to assist the Deaf individuals with their orders.

79. When another Starbucks employee saw the assistance being given to the above mentioned Plaintiffs, the signing Starbucks employee was giving to the Deaf she was brought near the kitchen area and yelled at by another Starbucks employee for providing such accommodation to the Deaf.

80. Once the signing Starbucks employee came back she was reluctant to speak with any of the Deaf individuals.

81. Since that incident Plaintiffs have not seen this employee at this Starbucks location.

82. Plaintiffs Lawrence Bitkower, Veronica Bitkower, Charles Kaufman, Jacqueline Kaufman, Evan Dach, and Ralph Witnitzer were humiliated, illegally discriminated against, treated like non-persons, and were denied equal services and privileges that non-deaf individuals received.

**March 2013 Discrimination Incident: 13-25 Astor Place Starbucks Location**

83. The next gathering of the "Deaf Coffee Chat" was on March 7, 2013 at the Starbucks Store located at 13-25 Astor Place, New York, New York 10003.

84. Plaintiffs Lawrence Bitkower, Veronica Bitkower, Charles Kaufman, Jacqueline Kaufman, Ibrahim Ali, Evan Dach, Ralph Wiznitzer, and Guy Wegener along with several other individuals attended the "Deaf Chat Coffee" gathering.

85. During this gathering, Deaf individuals peacefully and lawfully sat down and chatted over purchased cups of coffee, pastries, and other Starbucks products to socialize and get to know one another.

86. Without warning to Plaintiffs, Starbucks manager "Ziyad" proceeded to call the police to remove Plaintiffs from the Starbucks store by making false charges of misconduct against them.

87. The police arrived and Plaintiffs were shocked and frightened that a Starbucks employee would call the police to remove them from Starbucks.

88. Plaintiff Guy Wegener mediated the conversation between police, Deaf Individuals, and Starbucks employees.

89. New York City police officers explained to Plaintiff Guy Wegener that there was a report of a meeting being conducted without a permit, reports of disturbances caused by the Deaf, and reports that most of the Deaf individuals were non-paying customers.

90. Plaintiff Wegener explained and demonstrated to police that this was just a social gathering over coffee, that most of the Deaf individuals were paying customers, they were not causing a disturbance, and were in fact much quieter than the other customers as they communicated in sign language.

91. Upon information and belief, after investigating the matter and finding no illegal conduct, the police officers apologized to Plaintiffs, and reprimanded Starbucks employees for calling them over this matter and left.

92. Once the police officers left, a Starbucks employee by the name of "Karl" approached Plaintiffs and announced that Plaintiff Guy Wegener and Deaf Plaintiffs were not welcome at their store and proceeded to try to intimidate Plaintiffs by displaying hostile body language and falsely claiming he was a manager.

93. Shocked by Starbucks discriminatory treatment, Plaintiffs asked "Ziyad" why the police were called on them. "Ziyad" was at a loss for words because the police sided with Plaintiffs and then stated that his boss was the one that told him to call the police.

94. Plaintiffs Lawrence Bitkower, Veronica Bitkower, Charles Kaufman, Jacqueline Kaufman, Ibrahim Ali, Guy Wegener, Evan Dach, and Ralph Witnitzer were humiliated, illegally discriminated against, treated like non-persons, on the basis of being deaf or being associated with Deaf individuals and were denied equal services and privileges that non-deaf individuals not associated with the "Deaf Chat Coffee" group received.

95. On March 24, 2013, Plaintiff Guy Wegener sent an e-mail to Starbucks CEO Howard Schultz, Starbucks President Clifford Burrows, and Starbucks Executive Vice President Public Affairs Vivek Varma on behalf of Plaintiffs informing them of the illegal discriminatory conduct that was going on it their Starbucks stores.

96. On March 25, 2013, Suzanne DeChant Regional Vice President of Starbucks in New York replied to Plaintiff Guy Wegener and apologized for the "inconvenience we caused you and your friends" and offered a preloaded Starbucks gift card for their troubles.

97. Plaintiffs were not told that a full investigation would be launched or that people responsible for such discrimination would be dealt with appropriately.

98. Plaintiffs now bring this action to remedy all of the illegal discrimination that occurred against Plaintiffs by Starbucks.

## AS AND FOR A FIRST CAUSE OF ACTION
## (ADA VIOLATIONS)

99. Plaintiff repeats and reiterates each and every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth at length herein.

100. At all times relevant to this action, the ADA, 42 U.S.C. §§ 12101, *et seq.* was in full force and effect and applied to Defendant's conduct.

101. At all times relevant to this action, the United States Department of Justice regulations implementing Title III of the ADA, 28 C.F.R. Part 36, were in full force and effect and applied to the Defendant's conduct.

102. At all times relevant to this action, Plaintiffs, for the exception of Plaintiff Guy Wegener, had a significant hearing impairment and was a qualified individual with a disability within the meaning of Title III of the ADA, 42 U.S.C. §12102 (2).

103. At all times relevant to this action, Starbucks was a place of public accommodation within the meaning of Title III of the ADA, 42 U.S.C. § 12181(7).

104. The objective of the ADA is to eliminate discrimination against individuals with disabilities. Section 302(a) of the ADA, 42 U.S.C. § 12182(a), prohibits discrimination "on the

basis of disability in the full and equal enjoyment of goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

105. 42 U.S.C. § 12182(b)(1)(E) states that it "shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association."

106. In addition, Defendant retaliated against Plaintiffs in direct violation of 42 U.S.C. § 12203(b) and 28 C.F.R. § 36.206(c)(2) by "(t)hreatening, intimidating, or interfering with an individual with a disability who is seeking to obtain or use the goods, services, facilities, privileges, advantages, or accommodations of a public accommodation".

107. Defendant's failure to provide Plaintiffs with full and equal enjoyment of goods, services, facilities, privileges, advantages, or accommodations and retaliation thereof is in violation of its obligations under the ADA has directly injured, and continues to injure, Plaintiffs.

108. Defendant's violations of the ADA mentioned above directly caused Plaintiffs to sustain past and continuing injuries. Plaintiffs have suffered, are suffering, and will continue to suffer severe and irreparable injury as a result of Defendant's actions and policies, as hereinbefore alleged and Defendant's continuing pattern and practice of discrimination.

109. Defendant's illegal discriminatory conduct as hereinbefore alleged constitutes a reckless disregard of Plaintiffs' protected rights under Federal Law, and has intentionally, willfully and maliciously caused Plaintiffs humiliation, embarrassment and emotional pain and suffering.

## AS AND FOR A SECOND CAUSE OF ACTION
## (NEW YORK HUMAN RIGHTS LAW VIOLATIONS)

110.  Plaintiff repeats and reiterates each and every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth at length herein.

111.  At all times relevant to this action, the New York State Human Rights Law, Article 15 of the N.Y. Executive Law §§ 290, et seq. was in full force and effect and applied to Defendant's conduct.

112.  At all times relevant to this action, Plaintiffs for the exception of Plaintiff Guy Wegener, had a significant hearing impairment and are qualified individuals with a disability within the meaning of the Article 15 of the New York Executive Law § 292(21).

113.  At all times relevant to this action, Starbucks was a place of public accommodation within the meaning of Article 15 of the New York Executive Law § 292(9).

Article 15 of the New York Executive Law § 296(2)(a) states in relevant part as it pertains to persons with disabilities that:

> "It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, because of ...disability... of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof ... to the effect that any of the accommodations, advantages, facilities and privileges of any such place hall be refused, withheld from or denied to any person on account of ... disability... or that the patronage or custom thereat of any person of or purporting to ... having a disability is unwelcome, objectionable or not acceptable, desired or solicited."

114.  In addition, Defendant retaliated against Plaintiffs for opposing discrimination in direct violation of Article 15 of the New York Executive Law § 296(2)(a) which provides in relevant part that "It shall be an unlawful discriminatory practice for any person engaged in any

16

activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article.

115. Defendant's failure to provide Plaintiffs with full and equal enjoyment of facilities, privileges, advantages, or accommodations is in violation of its obligations under the New York Human Rights Law and has directly injured, and continues to injure, Plaintiffs.

116. Defendant's violations of the New York Human Rights Law mentioned above directly caused Plaintiffs to sustain past and continuing injuries. Plaintiffs have suffered, are suffering, and will continue to suffer severe and irreparable injury as a result of Defendant's discriminatory actions and policies, as hereinbefore alleged and Defendant's continuing pattern and practice of discrimination.

117. Defendant's illegal discriminatory conduct as hereinbefore alleged constitutes a reckless disregard of Plaintiff's protected rights under State law, and has intentionally, willfully and maliciously caused Plaintiff humiliation, embarrassment and emotional pain and suffering.

## AS AND FOR A THIRD CAUSE OF ACTION
### (NEW YORK CITY HUMAN RIGHTS LAW VIOLATIONS)

118. Plaintiff repeats and reiterates each and every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth at length herein.

119. At all times relevant to this action, the New York City Human Rights Law ("City HRL") New York City Administrative Code §§ 8-101 et. seq. was in full force and effect and applied to Defendant's conduct.

120. At all times relevant to this action, Plaintiffs for the exception of Plaintiff Guy Wegener, had a significant hearing impairment and are qualified individuals with a disability within the meaning of N.Y.C. Admin. Code § 8-102 (9).

121. At all times relevant to this action, Starbucks was a place of public accommodation within the meaning of N.Y.C. Admin. Code § 8-102 (9).

122. Under the City HRL, places of public accommodation are required to make reasonable accommodations for persons with disabilities, and may not "refuse, withhold from or deny to such [disabled] person any of the accommodations, advantages, facilities or privileges thereof." N.Y.C. Admin. Code § 8-107(4)(a).

123. The City HRL also explicitly allows "associational discrimination" claims: "The provisions of this section set forth as unlawful discriminatory practices shall be construed to prohibit such discrimination against a person because of the actual or perceived disability of a person with whom such person has a known relationship or association." N.Y.C. Admin. Code § 8-107(20).

124. In addition, Defendant retaliated against Plaintiffs for opposing discrimination in direct violation of N.Y.C. Admin. Code § 8-107(7). which provides in relevant part that "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter".

125. Defendant's violations of the New York City Human Rights Law mentioned above directly caused Plaintiffs to sustain past and continuing injuries. Plaintiffs have suffered, are suffering, and will continue to suffer severe and irreparable injury as a result of Defendant's discriminatory actions and policies, as hereinbefore alleged and Defendants' continuing pattern and practice of discrimination.

126. Defendant's illegal discriminatory conduct as hereinbefore alleged constitutes a reckless disregard of Plaintiff's protected rights under City Law, and has intentionally, willfully and maliciously caused Plaintiff humiliation, embarrassment and emotional pain and suffering.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully requests judgment against Defendant as follows:

A) Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendant's practices, policies and procedures have subjected Plaintiffs to discrimination in violation of the ADA, 42 USC §§ 12101 et seq., New York State Human Rights Law, Article 15 of the N.Y. Executive Law §§ 290, et seq., and the New York City Administrative Code §§ 8-101 et. seq.

B) Permanently enjoin Defendant from any practice, policy and/or procedure, which will deny Plaintiffs, equal access to, equal privileges to, and benefit from Defendant's facilities and services.

C) Enter a permanent injunction ordering Defendant:

   i. To cease discrimination against Plaintiffs and other deaf or hard of hearing customers;

   ii. To promulgate and comply with policies and procedures to ensure that Defendant and its staff do not discriminate against individuals who are deaf and hard of hearing;

   iii. To train all of Defendant's employees with proper information on how to interact with the Deaf and the proper protocols in dealing with persons with disabilities.

D) Award such damages as will compensate Plaintiffs fully for their humiliation, mental anguish, embarrassment, stress and anxiety, loss of self-esteem, self-confidence, personal dignity, shock, emotional distress, inconvenience, emotion pain and suffering and any other physical and mental injuries Plaintiffs suffered due to Defendants discriminatory conduct pursuant to Article 15 of the New York Executive Law § 297(9) and the New York City Administrative Code § 8-502.

E) Award punitive damages to Plaintiffs pursuant to New York City Administrative Code § 8-502.

F) Award reasonable costs and attorneys' fees; pursuant to A.D.A, 42 U.S.C. 12188(a)(1), Article 15 of the New York Executive Law § 297(9), and the New York City Administrative Code § 8-502.

G) Granting such further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand trial by jury for all of the issues a jury properly may decide, and for all of the requested relief that a jury may award.

Dated: August 9, 2013
New York, New York

EISENBERG & BAUM, LLP

By: _____
Eric M. Baum, Esq. (EB-5493)
ebaum@EandBlaw.com

_____
Andrew Rozynski, Esq. (AR-3228)
arozynski@EandBlaw.com

Attorneys for Plaintiff
Office and Post Office Address
24 Union Square East, Fourth Floor
New York, NY 10003
(212) 353-8700